# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| NICHOLAS OSTREM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-746 |
| | ) |
| ARLINGTON COUNTY SCHOOL BOARD, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment.

Plaintiff Nicholas Ostrem, a white male, was employed by Defendant as a pre-kindergarten special education teacher at Carlin Springs Elementary School between August 2015 and June 2018. Under Virginia law, Plaintiff was a "probationary" employee subject to yearly contract renewals. Plaintiff's contract was renewed after each of his first two years of service at the school, but was not renewed following his third year, before the 2018-2019 school year began.

Plaintiff's 2017-2018 contract with Defendant, which expired on June 20, 2018, specified that it did "not constitute a guarantee of employment for the following year." The contract also included a provision stating that the parties were subject to "all laws,

rules, regulations, and policies . . . relating to conditions of employment . . . of the Arlington Public Schools[.]. Under the Defendant's policy governing teacher's working schedules, Plaintiff was to receive 255 minutes of "planning time" per week. School policy further dictates that planning time may consist of any time when a teacher's students are attending art, music, or physical education classes (known as "specials"), time when support staff is supervising students at lunch, recess, or naptime, and when a substitute teacher is employed.

At the beginning of each school year, Plaintiff was responsible for submitting his daily schedule to the school's administrators. Plaintiff's daily schedule for his final year, the 2017-2018 school year, included periods when his students attended "specials," nap time, recess time, and after dismissal at the end of the school day. Plaintiff submitted a new schedule in November of 2017 which provided a similar daily breakdown. During the 2017-2018 school year, Plaintiff also had a classroom assistant.

During Plaintiff's first year at Carlin Springs Elementary, the 2015-2016 school year, he was utilized as a "resource" teacher that would assist special education students by providing teaching support to kindergarten, first grade, and second grade students in different classrooms. During Plaintiff's second and third years of employment, he was one of two special education pre-school teachers that only taught students in a special education classroom. The

2

other pre-school special education teacher at Carlin Springs Elementary was Kathleen Horenberg, a female. Horenberg had been employed by Arlington Public Schools since 2012 and had achieved "continuing" contract status in 2015.[1] Under continuing contract status, Horenberg was no longer subject to one-year contract renewals and had a different teaching evaluation period than Plaintiff.

In August 2017, during Plaintiff's second year of teaching at school, Eileen Delaney was hired to replace the school's outgoing principal, Corina Coronel. Before she departed, Coronel emailed Delaney to inform her that she had some concerns about Plaintiff's performance, noting specifically that he had "a difficult time accepting feedback." In her email message to Delaney, Coronel enclosed Plaintiff's first year performance review. Although Plaintiff's first year performance review indicated that he had adequate performance in some areas, it also included comments that Plaintiff needed to improve his instruction and help students be more independent in his classroom, that he needed to "create spaces" within his classroom to help students make appropriate choices, and that Plaintiff needed to access county-wide support earlier in the school year.

---

[1] After a teacher's first three years of service, the school board may place that teacher on "continuing contract" status. Va. Code § 22.1-303.

3

On November 6, 2017, a few months after commencing as principal at Carlin Springs Elementary, Delaney observed Plaintiff's classroom. During her observation, Delaney noticed that Plaintiff's "morning meeting" with his students — when Plaintiff informed his students of the day's planned activities and goals — was too long and that Plaintiff's students were confused and could not stay focused during the meeting. Delaney recorded her observations on a teacher evaluation form and met personally with Plaintiff to recommend that, among other changes, he reduce the length of his morning meeting with his students.

In light of Coronel's concerns and Delaney's own observations, Delaney began to ask other staff members to observe Plaintiff's classroom. On November 8, 2017, Sara Shaw, Arlington Public Schools' Special Education Coordinator, observed Plaintiff's class. Plaintiff had worked for Shaw as an intern during the 2014-2015 school year, and Delaney believed that he would be more accepting of her feedback because of their prior working relationship. Following her observation, Shaw emailed Plaintiff with specific concerns about the setup of his classroom, the length of time spent with his students in "circle time," and the overuse of classroom technology. Shaw believed that the length of time spent on certain activities and the use of technology was not appropriate because of the ages and special needs of his students. On the same day, Shaw had also observed Horenberg's

4

classroom and noted that it was "warm and inviting" and that she was more engaged with her students. Plaintiff's responded to Shaw's email by thanking her for the feedback, but also contesting many of her suggestions. Shaw also communicated her observations to Delaney, who decided additional observations of Plaintiff's classroom were needed.

On December 20, 2017, Wendy Pilch, the Arlington Public Schools Director of Early Childhood and Elementary Education, observed Plaintiff's classroom. Like Shaw, Pilch observed that Plaintiff's classroom setup and the length and use of technology during his morning meeting with students was problematic. Pilch also noted that one of Plaintiff's students was inadvertently exposed to classmates when being changed by Plaintiff's classroom assistant. Before observing Plaintiff's classroom, Pilch had observed Horenberg's class and noted that her classroom was better organized and that her morning meeting was shorter and more appropriate than Plaintiff's.

Plaintiff's classroom was again observed on January 10, 2018 by Arlington Public Schools Early Childhood Special Education Coordinator Elaine Perkins. Much like Delaney and Pilch, Perkins also identified concerns regarding Plaintiff's classroom configuration, specifically noting that Plaintiff's storage of furniture on top of the radiators was unsafe. Perkins also commented that Plaintiff struggled to give instruction to his

5

students, and much like the observers before her, that Plaintiff's morning meeting was too long and introduced too many topics to his students. During Perkins' observation, Plaintiff's morning meeting lasted 45 minutes, but in Perkins' experience, such meetings should last only 15 minutes.

On Friday, January 12, Delaney, Pilch, and Perkins met with Plaintiff to discuss their observations. Delaney explained to Plaintiff that the concerns and feedback he first received after Delaney's November 6, 2017 observation were repeated by the independent observations of Pilch, Perkins, and Shaw. By follow up email to Plaintiff dated January 18, 2018, Delaney sent the observation forms to Plaintiff by email with a comment that "highly recommend[ed] that [Plaintiff] take these suggestions to heart." Delaney further stated that she had concerns about Plaintiff's timely arrival to work, despite being previously warned. Delaney's January 18, 2018 message concluded by requesting that Plaintiff acknowledge that he had received her message and to return each teacher observation form with his signature.

Plaintiff responded by email four days later. Plaintiff's response included the signed observation forms along with lengthy written responses to each observer's feedback. Plaintiff's written responses largely refuted the observations and suggestions provided to him. In some of his responses, Plaintiff argued that the observers' feedback was inconsistent and that it could not be

6

implemented. For example, Plaintiff wrote that Perkins' suggestion to decrease the amount of technology used with his developmentally disabled students was inconsistent with Defendant's "overall agenda to introduce technology to [the] students . . . and help prepare them for the modern world." Plaintiff further stated that he did not believe that the observations provided "a fair assessment of [his] overall quality of instruction" because the observations were conducted during the same 30 to 45-minute window each day. Plaintiff concluded each written response by stating that his "failure to respond to any other statements made in the observation form[s] should not be taken as an admission or agreement. I have simply chosen, out of professional courtesy, not to respond to statements which I view to be pettifoggerous."

Plaintiff's classroom was observed one final time, on January 29, 2018, by Melinda Phillips, the assistant principal at Carlin Springs Elementary. Phillips similarly observed that Plaintiff failed to adequately engage with his students, that his morning meeting was too long, and that he struggled to give instruction. That same month, Plaintiff contacted the Arlington Public Schools Director of Employee Relations, Ellen Kennedy, about concerns that he was being "singled out." In response, Kennedy scheduled a meeting with Plaintiff and Delaney for Thursday, February 1, 2018. At the meeting, Delaney explained that the observers were consistently identifying concerns about the length of Plaintiff's

morning meetings, his overuse of technology with his young and developmentally challenged students, and that his students were sitting too long without enough instruction. Kennedy suggested that Plaintiff observe a colleague's classroom, but Plaintiff declined. On February 5, 2018, after the meeting with Kennedy and Delaney, Phillips provided her written observation form to Plaintiff and requested a meeting to discuss her observations. Plaintiff responded on February 7, 2018 stating that, "by advice of counsel," he was declining to meet with her and that he would write a formal response to her observations.

By letter dated May 23, 2018, Plaintiff was formally notified that his contract would not be renewed for the 2018-2019 school year and that his employment would end on June 20, 2018. Carlin Springs Elementary employed two other males in their third year of "probationary" status during the 2017-2018 school year. One of the other males was placed on continuing contract status and the other resigned.

In this matter, Plaintiff alleges that Defendant discriminated against him based on his gender in violation of Title VII of the Civil Rights Act of 1964 (Count I). Plaintiff also alleges that Defendant breached his employment contract by failing to provide him with 255 minutes of planning time per week (Count II). Defendant has moved for summary judgment on both counts.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Defendant argues that it is entitled to summary judgment on Count I, Title VII gender discrimination, because Plaintiff was not meeting his employer's legitimate performance expectations, because Defendant did not take any adverse employment action against Plaintiff, and because Plaintiff fails to establish that he was treated differently than any similarly situated employees. In response, Plaintiff maintains that he was meeting the legitimate expectations of his employer because he had received some positive performance comments and because there should be "serious questions" as to the independence of the Pilch, Perkins, and Phillips observations. Defendant also argues that there were

"multiple adverse employment actions" taken against him by way of the "negative evaluations" provided by the observers. Defendant also maintains that Horenberg is a proper comparator because they shared the same supervisor, the same schedule, and were both evaluated each school year.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie claim under Title VII when there is no direct evidence of discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff can establish all elements of the prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer produces a legitimate reason for the action, the burden again shifts to the plaintiff to show that the employer's rationale was pretext for discrimination. McDonnell Douglas, 411 U.S. at 804-05.

Defendant argues that Plaintiff cannot establish three elements of his prima facie case: that he was meeting his employer's legitimate performance expectations; that Defendant took any adverse employment action against him; or that he was treated differently from similarly situated employees outside of his class. The Court agrees that Plaintiff fails to establish his prima facie case.

First, when assessing whether a plaintiff was meeting the legitimate expectations of his or her employer, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006) (quoting Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000)). A plaintiff's disagreement with an employer's criticisms is not relevant because the inquiry is not whether an employer's assessments of a plaintiff were accurate. Hawkins, 203 F.3d at 279-80. It is well-established that a court is not a "super-personnel department weighing the prudence of employment decisions[.]" Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). A plaintiff's failure to establish that he was meeting the employer's legitimate performance expectations is, by itself, fatal to a Title VII claim. Rayyan v. Va. DOT, 719 F. App'x 198, 205 (4th Cir. 2018).

The record is replete with evidence that Plaintiff was not meeting Defendant's legitimate performance expectations. Plaintiff's classroom was observed on five separate occasions by five separate observers, each of whom provided written feedback and suggestions on how to improve. On January 18, 2018, roughly six months before his contract was set to expire, Delaney "highly recommended" to Plaintiff that he incorporate the observers' recommendations, but he refused. Although there were, unsurprisingly, minor differences in the feedback Plaintiff received, it was largely consistent. The observers repeatedly suggested that Plaintiff change the physical layout of his classroom to be more conducive to learning. The observers repeatedly suggested that Plaintiff refrain from overusing classroom technology, and above all else, repeatedly suggested that he shorten his morning meeting with his young, developmentally challenged students. Instead of accepting the feedback, Plaintiff responded defiantly. Plaintiff either disagreed with the observations and refused to implement any changes or dismissed them as "pettifoggerous." See Warch, 435 F.3d at 517-18 (employee not meeting employer's legitimate expectations after receiving comments from observers and "explicit instructions on how to improve."). Even when viewed most favorably toward Plaintiff, the evidence shows that Plaintiff was not meeting Defendant's legitimate performance expectations.

Second, the evidence shows that Defendant did not take any adverse employment action against Plaintiff. An "adverse employment action" must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Conduct that does not detrimentally affect the terms, conditions, or benefits of employment cannot constitute adverse employment action. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650-52 (4th Cir. 2002). An action is "adverse" if it results in a reduction in pay, demotion in position, termination, or other similarly serious change in employment status. Lettieri v. Equant Inc., 478 F.3d 640, 650 n. 2 (4th Cir. 2007). The absence of any adverse employment action is fatal to a plaintiff's claim. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004).

As Plaintiff's employment contract made clear, his position was scheduled to end on June 6, 2018. Plaintiff was not entitled to a contract renewal and the Defendant was under no obligation to retain Plaintiff for the following school year. See Va. Code § 22.1-305. Plaintiff concedes as much in his opposition, but instead argues that the written feedback he received from the observers constituted "multiple adverse employment actions." It is true that an employer's written reprimand may constitute an adverse

13

employment action, but only if it is a "signpost on a predetermined path to a true adverse employment action." Adams v. Anne Arundel County Public Schools, 789 F.3d 422, 429 (4th Cir. 2015). Similarly, a "downgrade of a performance evaluation could effect a term, condition, or benefit of employment if it has a tangible effect on the terms or conditions of employment." James, 368 F.3d at 377. But a poor performance evaluation is actionable "only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Id.

The written observations received by Plaintiff were not disciplinary, they were comments written by other special education professionals intended to provide Plaintiff with the opportunity improve his performance. There is no evidence in the record that the written observations detrimentally affected any of Plaintiff's terms or conditions of employment, nor that they were "signpost[s] on a predetermined path" to an adverse employment action. As Plaintiff concedes, Defendant was not obligated to renew Plaintiff's employment contract. Plaintiff's contract simply expired.

Third, Plaintiff must show that he was "similar in all relevant respects to their comparator." Haywood v. Locke, 387 Fed. Appx. 355, 359 (4th Cir. 2010). Such a showing "would include evidence that the employees 'dealt with the same supervisor, were

14

subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Haywood, 387 F. App'x at 359 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1982)). Courts may also consider the comparator's level of experience as compared to the plaintiff. See Sanders v. Tikras Tech. Sols. Corp., 725 Fed. App'x 228, 230 (4th Cir. 2018) (individual with more than twice the experience as plaintiff not a proper comparator).

Here, Plaintiff relies on Horenberg as his comparator because she was the other pre-school special education teacher at Carlin Springs Elementary. Defendant argues that Horenberg is not a proper comparator because, unlike Plaintiff, she is on continuing contract status and has more teaching experience and better credentials. The Court agrees with Defendant that Horenberg is not a proper comparator because she is subject to different standards by virtue of her "continuing" contract status. Compare Va. Code § 22.1-303 with § 22.1-304. And although Horenberg had the same supervisor as Plaintiff, there is also no evidence that Horenberg engaged in the same conduct as Plaintiff. Horenberg did receive some classroom observations, but unlike Plaintiff, there is no evidence that she received and rejected feedback advising her to modify her classroom configuration or shorten the length of her morning meetings.

15

Because Plaintiff has failed to establish a prima facie case of Title VII gender discrimination, Defendant is entitled to summary judgment on Count I.

Defendant next argues that it is entitled to summary judgment on Count II, breach of contract, for three reasons. First, Defendant argues that Plaintiff cannot establish that any breach occurred because Plaintiff was, based on the schedules he submitted, receiving at least 255 minutes of planning time per week. Second, Defendant argues that even if Plaintiff could establish a breach, it was not material. Third, Defendant argues that Plaintiff has not been damaged by any alleged breach.

The elements of a breach of contract action are (1) a legally enforceable obligation; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to plaintiff caused by the breach of the obligation. <u>Ulloa v. QSP, Inc.</u>, 624 S.E.2d 43, 48 (Va. 2006). Importantly, a "material breach" of contract is a "failure to do something that is so fundamental to the contract that the failure to perform hat obligation defeats an essential purpose of the contract." <u>Horton v. Horton</u>, 487 S.E.2d 200, 204 (Va. 1997); <u>Vienna Metro LLC v. Pulte Home Corp.</u>, 786 F. Supp. 2d 1076, 1081 (E.D. Va. 2011) (a material breach is "a failure to comply with a fundamental aspect of the contract."). The type of evidence required to establish a material breach of contract "will vary depending on the facts surrounding a particular contract . .

. [but] [i]n many cases, a material breach is proved by establishing an amount of monetary damages flowing from the breach." Horton, 487 S.E.2d at 204.

Defendant's argument that there has not been any material breach of Plaintiff's employment contract is well-taken. Assuming that Plaintiff is correct that he did not receive all 255 minutes of planning time per week, there is no evidence that any of Plaintiff's alleged damage flowed from the loss of that time. The Defendant's policy to provide Plaintiff with 255 minutes of planning time is also not a "fundamental aspect" of his employment contract. The Defendant's policy on planning time, while apparently incorporated by Plaintiff's one-year employment contract, was not central to his employment as teacher at Carlin Springs Elementary. Plaintiff did not put forth any evidence that he was damaged by Defendant's alleged breach, which is fatal to his breach of contract claim. Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 136 (Va. 2009) ("Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim."). Because Plaintiff provides no evidence that Defendant materially breached his employment contract, Defendant is entitled to summary judgment on Count II.

For the forgoing reasons, this Court finds that Defendant is entitled to summary judgment. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 19, 2019